Filed 4/13/21  Naim v. Namvar CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| SOLEIMAN ISRAEL NAIM, | B303981 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC400561) |
| v. | |
| HOMAYOUN NAMVAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward Moreton, Judge.  Affirmed as modified.

Law Offices of Bruce Altschuld, Bruce Altschuld; Reiter Dye & Brennan and Paul Taylor Dye for Defendant and Appellant.

Hill, Farrer & Burrill, Daniel J. McCarthy and Clayton J. Hix for Plaintiff and Respondent.

_____

In 2019, judgment creditor Soleiman Israel Naim (creditor) sought to renew a 2011 judgment against judgment debtor Homayoun Namvar (debtor). Debtor moved to vacate the renewal, raising procedural and substantive challenges. The trial court denied the motion to vacate, and debtor appeals. We conclude debtor's challenges are either meritless or procedurally barred themselves. However, a small mathematical error in the amount of postjudgment interest requires correction. We modify the renewal of judgment and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    *The Underlying Judgment, Costs and Fees*

In 2008, creditor brought suit against three defendants on a secured note issued in favor of Namco Capital Group, Inc. One of those defendants, appellant Namvar, was sued on his guarantee of the note. He would become the debtor in this case.

On May 3, 2011, judgment was entered in favor of creditor and against debtor on his guarantee, in the principal amount of $1,198,777, plus interest of $238,483.[1] Costs of $2,443.15 and attorney fees of $160,182.44 were subsequently awarded. In 2012, after creditor prevailed on debtor's appeal (*Naim v. Namvar* (Aug. 22, 2012, B234088) 2012 WL 3590828), the trial court awarded creditor an additional $10,589.01 in appellate costs and attorney fees.

---

[1]    The judgment was against debtor alone; resolution of the matter against the other defendants is not disclosed by the record before us, and is irrelevant to our disposition of the current appeal.

### 2.    *Application for and Renewal of Judgment*

On October 3, 2019, creditor filed a form application for and renewal of judgment.  (Code Civ. Proc., § 683.110 et seq.)[2]  The application sought renewal of a money judgment (item 5), calculated as follows:  The total judgment was for $1,437,260, inclusive of prejudgment interest.  Creditor added $173,214.60 in costs after judgment (total costs and attorney fees awarded after trial and appeal).  He also added $1,346,615.99 in "Interest after judgment," supported by an affidavit of counsel, calculating the interest purportedly due, and a $30 filing fee.[3]  Adding these figures, the "Total renewed judgment" stated in the application for and renewal of judgment was $2,957,120.59.  The line item in the application for "Credits after judgment" was "0.00."

On October 4, 2019, the clerk issued a stamped notice of renewal of judgment.

On October 7, 2019, creditor served all three documents (notice of renewal of judgment, application for and renewal of judgment, and the affidavit of creditor's counsel calculating interest) on debtor by mail.

### 3.    *Creditor's Motion to Vacate and Motion to Strike*

On November 4, 2019, debtor filed both a motion to vacate the renewal of judgment and a motion to strike the notice of renewal.  Both documents raised the same three challenges: (1) the notice of renewal, as issued by the clerk and served by

---

[2]    All future undesignated statutory references are to the Code of Civil Procedure.

[3]    As we shall discuss below, we have identified a small error in counsel's calculation.

3

creditor, was *accompanied by* the application for and renewal of judgment, but did not have a copy of the document *stapled to it* in violation of the California Rules of Court, rule 3.1900; (2) the employee of creditor's counsel's law firm who served the notice of renewal used the law firm's usual method of collecting and processing mail, rather than personally placing it in the U.S. Mail herself, in purported violation of the statutory service requirements; and (3) debtor believed creditor was disingenuous when creditor claimed he had received no credits against the judgment.

On this last point, debtor asserted that the underlying judgment against him was based on his guarantee of a note that had been secured by a deed of trust on a property on Pico Boulevard. Debtor claimed that the property had been sold and that creditor must have recovered something on the sale which should be credited against the judgment. The argument was supported by a request for judicial notice.[4] It was also supported by a short declaration by debtor, explaining that he was "aware" that the loan was secured by the real estate, that he was "informed and believe that [creditor] advanced consideration to the borrower Namco Capital Group and in exchange received an 80% interest in the Pico property." He attached a closing statement for the sale of the property, indicating that it was sold by the liquidating trustee for Namco; he stated that he was

---

[4]     In the trial court, debtor had sought judicial notice of a number of undisputed documents from this case and two recorded documents related to the Pico property – a grant deed and a deed of trust. Neither document on its face demonstrates that creditor had an interest in the property at the time of sale.

4

"informed . . . that [creditor] assigned his rights to the security to" the liquidating trustee.[5]

On December 26, 2019, creditor filed his opposition to both motions.[6] As to the complaints regarding not stapling the documents and not personally inserting them in a mailbox, creditor argued that these were hyper-technical complaints and that debtor had, in fact, received actual notice.

With respect to debtor's argument that credits should have reduced the judgment, creditor objected to nearly every paragraph in debtor's declaration on hearsay and lack of foundation. He also objected on the same grounds to the

---

[5] As we shall discuss, objections were sustained to debtor's declaration and the closing statement. We nonetheless observe that the closing statement did not indicate a payoff to creditor nor did it refer to the deed of trust that creditor purportedly held. (The statement did reflect a payoff to one Martam Pirian, who is not otherwise identified in the record.) Debtor argued that, even though the closing statement does not reflect any payment to creditor, 80 percent of the total sales price should nevertheless be credited against the judgment.

[6] Debtor would argue that this opposition was untimely. At the hearing on the motions, the trial court suggested that it would not strike the opposition for untimeliness, but would provide debtor's counsel with additional time to respond. Debtor's counsel asked for the additional time. At that point, creditor's counsel pointed out that debtor's counsel had already taken extra time, in that his reply was also filed late. Concluding that debtor's counsel had already obtained the extra time via "self-help," the court declined to continue the hearing. Debtor's counsel responded, "Fair enough." Although, on appeal, debtor complains that the opposition was belatedly filed, he makes no argument that the court erred in its resolution of the issue.

5

admissibility of the closing statement.  Creditor argued that debtor's theory was "based entirely on incompetent evidence" and asserted that debtor offered no evidence that creditor had "received proceeds from the sale" of the property.  Creditor submitted his own declaration, stating that he "did not directly or indirectly receive anything from the purported sale of the Pico property."  He added, "After the trial in this action concluded on November 15, 2010, I did not enter into an agreement with the trustee for [Namco] under which I assigned to that trustee any rights to or deed of trust against the Pico property."

4.    ***Debtor's Reply***

On January 3, 2020, debtor filed a reply which first argued that creditor must be held to the statutory requirements regarding stapling and service.

On the issue of credits to the judgment, debtor now argued that creditor is " 'in cahoots' with another plaintiff [Nader & Sons] in another action in which the [debtor] is also the [debtor] in that other action."  The other action resulted in a New York judgment.  Debtor predicted that he would "successfully oppose" the motion of Nader & Sons to renew its New York judgment. "When it became apparent to Nader & Sons they were going to lose their New York judgment, they hired the very same law firm (Hill Farrerr [*sic*] & Burrill) it uses in California to enforce the New York judgment, to file the application to renew the *Naim* judgment."  Debtor posited that creditor "apparently" gave up his rights to Nader & Sons.  Debtor continued with the unsubstantiated argument that creditor "is not the holder of the judgment – he appears to be an unrecorded assignor of record and the court should compel [creditor] to provide competent

6

evidence that he is the proper party authorized by statute to renew the judgment."

## 5.     *Debtor Attempts to Subpoena Creditor for the Hearing*

The motions were set for hearing on January 8, 2020. Before the hearing, debtor's counsel issued a subpoena duces tecum for creditor's personal appearance at the hearing, and the production of his documents related to the release of his lien on the property and all documents showing any assignment of the lien to Nader & Sons.

Creditor filed objections to the subpoena, arguing, among other things, that debtor had not requested to present oral testimony at the hearing, as required by California Rules of Court, rule 3.1306.  However, creditor's counsel miscited the applicable rule, referring to rule 3.1308 instead.

On the day of the hearing, debtor filed a "Bench Brief re: Subpoena" arguing that creditor's objections were meritless.  As to debtor's failure to comply with the rule regarding a request to present oral testimony, debtor argued only that creditor cited an irrelevant rule of court; debtor did not address his failure to comply with the correct rule by providing the court with a request supported by good cause.

## 6.     *Hearing, Ruling and Appeal*

The trial court granted debtor's request for judicial notice, sustained creditor's objections to debtor's declaration, and indicated its tentative decision was "to deny [debtor's motion to vacate and his motion to strike] for the reasons stated in the

7

opposition." The court then heard argument from debtor's counsel.[7]

Debtor's counsel argued that he had subpoenaed creditor to appear "to get answers to the questions about how his first trust deed on the property that he made loan, made a secured loan, my client guarante[e]d it, how that vaporized. I don't have any other way to do it other than to subpoena him to this hearing. If he's got the money for the loan that he made and he's not[] telling the court, then he's engaging in a double recovery, but this is a judgment debtor proceeding. Why can't we enforce my subpoena, have him testify what happened to that first trust deed that he had on the property. [¶] Remember, Your Honor, they're alleged in the underlying action, the lawsuit in the underlying action. Why are we permitting this plaintiff to get a double recovery?"

The reporter's transcript indicates the court responded, "As a matter of law, we don't permit that, but I do [*sic*] think you made sufficient showing to justify having the evidentiary hearing on that issue to see if that's the case. You don't have to remedy, but I assume this is not." The court then adopted its tentative ruling.

Debtor filed a timely notice of appeal.

### DISCUSSION

We first briefly discuss the law applicable to the renewal of money judgments. Second, we reject debtor's two challenges to

---

[7]     Debtor's counsel began argument by restating the arguments from his papers. The court reminded counsel that it had already read the papers, so "you are not likely to persuade me to change my tentative ruling, if that's all you are doing." Counsel immediately turned to the issue of his subpoena of creditor.

the procedures used by creditor (the failure to staple documents and the failure to serve by personally depositing documents into a U.S. Mail box).  Third, we turn to the court's refusal to permit testimony on the issue of whether creditor obtained funds that should be credited against the judgment, and conclude the court's denial of an evidentiary hearing was well supported.  Finally, we address an error in creditor's counsel's calculations, and modify the amount of interest accrued in the renewed judgment.

## 1.    *Law of Renewal of Judgments*

"The judgment creditor may renew a judgment by filing an application for renewal of the judgment with the court in which the judgment was entered."  (§ 683.120, subd. (a).)  The application for renewal of a money judgment shall include, among other things, "the information necessary to compute the amount of the judgment as renewed."  (§ 683.140, subd. (d).)

"Upon the filing of the application, the court clerk shall enter the renewal of the judgment in the court records."  (§ 683.150, subd. (a).)  "In the case of a money judgment, the entry of renewal shall show the amount of the judgment as renewed."  (§ 683.150, subd. (c).)  "The statutory renewal of judgment is an automatic, ministerial act accomplished by the clerk of the court; entry of the renewal of judgment does not constitute a new or separate judgment."  (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 262 (*Goldman*).)

"The judgment creditor shall serve a notice of renewal of the judgment on the judgment debtor.  Service shall be made personally or by first-class mail and proof of service shall be filed with the court clerk.  The notice shall be in a form prescribed by the Judicial Council and shall inform the judgment debtor that

9

the judgment debtor has 30 days within which to make a motion to vacate or modify the renewal." (§ 683.160, subd. (a).)

"Until proof of service is filed pursuant to subdivision (a), no writ may be issued, nor may any enforcement proceedings be commenced to enforce the judgment, except to the extent that the judgment would be enforceable had it not been renewed." (§ 683.160, subd. (b).) "[T]here is no statutory requirement that the notice of renewal be served on the judgment debtor in order for the renewal to be effective. [Citation.]" (*Goldman, supra,* 160 Cal.App.4th at p. 262, fn. 4.) Service is not necessary for renewal; the renewed judgment simply cannot be enforced until the notice of renewal is served. (*Ibid.*)

Within 30 days of service of the notice, the judgment debtor may move to vacate the renewal of judgment. (§ 683.170, subd. (b).) The renewal may be vacated "on any ground that would be a defense to an action on the judgment, including the ground that the amount of the renewed judgment as entered pursuant to this article is incorrect . . . ." (§ 683.170, subd. (a).) "Upon the hearing of the motion, the renewal may be ordered vacated upon any ground provided in subdivision (a), and another and different renewal may be entered, including, but not limited to, the renewal of the judgment in a different amount if the decision of the court is that the judgment creditor is entitled to renewal in a different amount." (§ 683.170, subd. (c).)

## 2. *Debtor's Procedural Challenges Are Not Properly Before Us*

As discussed above, the notice of renewal of judgment must be in the form prescribed by the Judicial Council. The Judicial Council form states, "A copy of the *Application for and Renewal of Judgment* is attached (*Cal. Rules of Court, rule 3.1900*)." The

10

cited rule provides, "A copy of the application for renewal of judgment must be physically or electronically attached to the notice of renewal of judgment required by Code of Civil Procedure section 683.160." Here, the documents were served together, but not stapled.

Debtor's second procedural challenge is that the notice of renewal was not properly served, in that it was not personally placed in the mailbox by the person effecting service, and that, instead, the person serving used her office's customary practices for mail collection.

Both of these challenges go to whether the notice of renewal was properly served. But whether the notice of renewal was properly served has nothing to do with the validity of the entry of the renewal of judgment. It, thus, may not serve as a ground to vacate or strike the application for renewal. As we have already explained, a judgment creditor cannot initiate enforcement proceedings on the renewed judgment until it has properly served the notice of renewal; but the renewal is effective regardless. (*Goldman, supra,* 160 Cal.App.4th at p. 262.) As the record does not indicate that creditor has yet attempted enforcement proceedings, any challenges to the service of the notice of renewal are premature.[8]

Because we are modifying the renewal of judgment, creditor will likely serve a new notice of renewal. We hasten to

[8]     To the extent debtor contends the notice of renewal *in the court's file* is flawed because it does not have the application for and renewal of judgment stapled to it, we fail to see the relevance. The notice of renewal, signed by the clerk, has no legal effect unless it is served. It post-dates the entry of renewal itself, so cannot impact the validity of the entry of renewal. Its only purpose is to give notice, which is only effective upon service.

11

add for the benefit of the parties going forward that debtor's argument on the means of mailing the notice of renewal appears to be based on a misunderstanding of the statute. Section 683.160, subdivision (a) provides that service is to be personal or by "first-class mail." Section 684.120, subdivision (a), further provides that, if a notice is to be served by mail, "it shall be sent by first-class mail (unless some other type of mail is specifically required) and shall be deposited in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage paid, addressed [to the person being served]." Debtor argues that this means the person making the service must personally deposit the service copy in the U.S. Mail, and not use the business's ordinary practice for collecting mail. This is not the case. "Proof of service by mail as provided in Section 684.120 may be made in the manner prescribed in Section 1013a." (§ 684.220, subd. (c).) Section 1013a, in turn, provides a number of alternatives for a proof of service by mail, including that the person making service used his or her "ordinary business practices" for the collection and processing of mail. (§ 1013a, subd. (3).)[9] Debtor's argument regarding stapling is similarly misguided; there is no authority that a failure to staple documents which were indisputably served together would defeat the effectiveness of the notice.

---

[9] Debtor argues that creditor "sought to deceive the court" by relying on section 1013a, which debtor believes is inapplicable. On the contrary, section 684.220, subdivision (c) specifically incorporates the proof of service options of section 1013a into the title on Enforcement of Judgments.

12

### 3. *Refusal to Hold an Evidentiary Hearing*

California Rules of Court, rule 3.1306(a) provides, "Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown." Rule 3.1306(b) provides, "A party seeking permission to introduce oral evidence, except for oral evidence in rebuttal to oral evidence presented by the other party, must file, no later than three court days before the hearing, a written statement stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing."

It is undisputed that debtor did not file a written statement in compliance with this rule. The trial court was under no obligation to accept testimony at the hearing.[10]

Debtor also argues that the trial court actually decided to hold an evidentiary hearing then for some unexpressed reason just changed its mind. The reporter's transcript of the hearing includes the following from the court: "As a matter of law, we don't permit that [double recovery], but I do think you have made sufficient showing to justify having the evidentiary hearing to see if that's the case. You don't have to remedy, but I assume this is not." Relying on the first sentence, debtor argues that the court found that he had made a sufficient showing for an evidentiary

---

[10] Debtor suggests that, since creditor cited the wrong rule number in his objection to debtor's subpoena, creditor waived any objection on the right rule. The subpoena is actually a red herring. Whether the subpoena is enforceable is not relevant to whether debtor was entitled to have an evidentiary hearing at all. A trial court is not required to permit oral testimony at a law and motion hearing in the absence of good cause.

13

hearing on the issue, but nonetheless refused to hold the hearing. We disagree. Perhaps, the trial court misspoke (no party moved in this court to undertake record correction proceedings) but the ultimate result was no hearing was held. We therefore do not focus on what the court said; we review what the court indisputably did: declined to hold an evidentiary hearing. This was not error. When a party has failed to comply with the requirements "for requesting live testimony at a law and motion hearing, the trial court [does] not err in denying the request. [Citation.]" (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 465.)

Debtor also failed to establish good cause for a hearing. The objections to his declaration and the closing statement were sustained, leaving him with little but speculation.[11] Not only was debtor's argument speculative, it contradicted itself over time. It is undisputed that creditor once claimed he was the beneficiary of a deed of trust on the Pico property. From that starting point, debtor initially asserted that (1) creditor had given up his trust deed to the liquidating trustee for Namco, for unknown reasons or consideration; and/or (2) creditor had, in exchange for consideration to Namco, received an 80 percent interest in the property itself, entitling him to 80 percent of the gross proceeds of

---

[11] On appeal, debtor does not challenge the court's rulings sustaining the objections to his evidence. Having failed to challenge the court's evidentiary rulings, debtor has forfeited the challenge to the exclusion of his evidence. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.) For the first time in his reply brief, debtor makes brief arguments as to admissibility. This is too late. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

14

sale. After creditor submitted a declaration denying both of these allegations, debtor changed his theory, and instead asserted that (3) creditor had assigned the *deed of trust* to Nader & Sons; and/or (4) creditor had secretly assigned the *judgment* to Nader & Sons. The only evidence supporting this second set of arguments is that creditor was represented by the same counsel that represents Nader & Sons in another enforcement of judgment proceeding against debtor. The trial court reasonably concluded that this offer was insufficient to establish good cause for an evidentiary hearing on whether creditor had obtained funds that should have been credited against the judgment.[12]

### 4. *We Modify the Renewal of Judgment*

When creditor filed his application for and renewal of judgment, it was accompanied by an affidavit of counsel calculating the then accrued amount of interest. Because various amounts of recovery (judgment, costs, attorney fees, appellate costs and attorney fees) were fixed at different dates, interest began accruing on each amount at a different date, requiring separate interest calculations.

---

[12] Both in their briefs and at oral argument, the parties discussed whether the trial court's order permits a double recovery. That issue is not squarely before us. There are other procedural vehicles to determine the amount of a judgment still to be satisfied in light of intervening events. For example, a debtor can obtain an acknowledgement of partial satisfaction of judgment through the procedures set forth in section 724.110. That statute provides, in part, that the judgment debtor may apply to the court for an order compelling the creditor to file a partial satisfaction of judgment.

Debtor did not challenge any specific element of the calculation.[13]  Our review of the record, however, revealed an error.  Attorney fees of $160,182.44 were awarded on July 6, 2011.  Creditor's counsel acknowledges this date in his affidavit.  However, in his calculations, creditor's counsel mistakenly used the earlier date of June 6, 2011.

We sought further briefing on the issue.  Creditor's counsel conceded the error and re-performed his entire interest calculation; debtor submitted no response to our request for further briefing.  Because this is a simple computational error that we can correct on appeal, we do not need to remand for an additional hearing.

Creditor's counsel's corrected calculation results in a new total interest claimed of $1,345,299.59 instead of the initially-claimed total of $1,346,615.99 – a reduction of $1,316.40.  As debtor filed no objection, we adopt creditor's modification.[14]

---

[13]    Debtor argues only that creditor's "attorney's affidavit calculating the amount owed requires an advanced degree in statistics and the burden is not on a defendant to figure out the amount owed and whether the affidavit is accurate." (Record citation omitted.)  Although there are multiple calculations in the affidavit, the math involved appears no more complex than: (1) applying the 10 percent interest rate to a given principal amount to determine the amount of interest per year; (2) dividing by 365 to determine the amount of interest accruing on the principal amount per day; and (3) multiplying the daily interest amount by the relevant number of days.

[14]    Our own calculation confirms the result.  Counsel's mistake in using July 6 rather than June 6 resulted in an excess of 30 days of interest on the attorney fee award.  The award of attorney fees was for $160,182.44.  Ten percent annual interest on that

16

The interest, to the time of the application for and renewal of judgment should reflect a total of $1,345,299.59 instead of $1,346,615.99.  The total renewed judgment should reflect a total of $2,955,804.19 instead of $2,957,120.59.

The renewal of judgment is to be modified accordingly.

### DISPOSITION

The trial court is directed to modify the application for and renewal of judgment as follows:  In item 5, Renewal of money judgment:  (1) line f. "Interest after judgment" shall be modified from $1,346,615.99 to $1,345,299.59; and (2) line h. "Total renewed judgment" shall be modified from $2,957,120.59 to $2,955,804.19.  With the above modifications, the court's orders denying debtor's motions to vacate and strike are affirmed. Debtor shall pay creditor's costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J

---

amount is $16,018.24.  Dividing by 365 results in daily interest in the amount of $43.89.  Thirty days of interest at this rate is $1,316.70.  The 30-cent difference between this and creditor's total of $1,316.40 is attributable to rounding at intermediate steps of the calculation.